IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
MIDDLE DIVISION

| | |
|---|---|
| KYLE CHRISLEY and ASHLEIGH CHRISLEY<br><br>*Plaintiff,*<br><br>v.<br><br>RUTHERFORD COUNTY,<br>NICHOLAS SMITH and STEVE HILL<br><br>*Defendants.* | Case No.<br><br>JURY DEMANDED |

## COMPLAINT

Comes now the Plaintiffs, KYLE CHRISLEY and ASHLEIGH CHRISLEY, by undersigned counsel and for their Complaint against the Defendants state as follows:

### INTRODUCTION

1. This case is about a family terrorized in their own home and then punished for calling for help. On a quiet afternoon in September 2024, Kyle and Ashleigh Chrisley's home in Murfreesboro became the scene of a frightening confrontation. A disgruntled mechanic, angry over a payment dispute, showed up uninvited, kicked at their doors, threatened violence, and used his car as a weapon by ramming their SUV and nearly running Kyle over in front of multiple neighbors.

2. But when deputies from the Rutherford County Sheriff's Office arrived, they didn't arrest the man who caused the chaos. Instead, they arrested Kyle Chrisley, and ignored clear evidence that he was the victim, not the aggressor.

Deputies disregarded eyewitnesses, overlooked available video footage, and ignored Tennessee's self-defense law.

3. To make matters worse, when Ashleigh Chrisley pulled out her phone to document the officers' conduct, she was threatened with arrest and ordered to stop recording. She had every right to capture what was happening on her front lawn, but that right was taken from her under color of law.

4. Kyle and Ashleigh Chrisley bring this lawsuit because no family should face criminal charges or threats of arrest for defending themselves at home or for exercising their constitutional rights. This is a case about false arrest, excessive force, and retaliation for trying to hold police officers accountable.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

6. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

7. Plaintiffs asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees

and costs to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

8.  The Plaintiff's claims arise under the First and Fourth Amendments to the United States Constitution, made applicable to the states and state actors through the Fourteenth Amendment to the United States Constitution.

9.  This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district.  Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

10. Plaintiff Ashleigh Chrisley is an adult resident of Murfreesboro, Tennessee. She is the wife of Plaintiff Kyle Chrisley.

11. Defendant Rutherford County is a political subdivision of the State of Tennessee and is the employer of Defendant Nicholas Smith and Defendant Steve Hill.

12. Defendant Nicholas Smith is an officer of the Rutherford County Sheriff's Department.  He is sued in his individual capacity.

13. Defendant Steve Hill is an officer of the Rutherford County Sheriff's Department. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

14. Plaintiffs Kyle and Ashleigh Chrisley live in Murfreesboro, Tennessee in the Gatewood Estates neighborhood.

15. During 2024 and through the present, Plaintiff Kyle Chrisley operated a small load freight business from his home.

16. Plaintiff Ashleigh Chrisley handled the bookkeeping and expenses for the business.

17. On or about April 2024, Plaintiff Kyle Chrisley hired Kentravis Moore, who operated under the name KT Mobile Diesel Repair, LLC, to perform mechanical work on Kyle Chrisley's work truck.

18. Moore completed the mechanic work and Ashleigh Chrisley paid him in full.

19. In the following months, Moore began harassing Plaintiff Kyle Chrisley for additional money, making repeated phone calls from different numbers and threatening the Chrisleys unless they paid him.

20. In July 2024, Moore left one such voicemail demanding payment.

21. Shortly thereafter, Moore appeared uninvited at Chrisley's home while the Plaintiffs were away. Their minor daughter answered the door and told Moore that her dad was not home. Moore told her that her dad owed him money, and threatened, "Tell your dad if he does not pay me, I'm going to get it out of his ass."

22. The Chrisleys' minor daughter told them about Moore's threat.

23. On September 9, 2024, at approximately 3:12 PM, Moore drove into the Chrisley's neighborhood in a Chrysler 300C with no tags, no bumpers, and a modified exhaust system:



24. Moore parked the vehicle at the Chrisleys' residence at 1038 California Drive.

25. Plaintiff Kyle Chrisley had just returned home from work, showered, and was relaxing in pajama pants, socks, and no shirt. His wife, Ashleigh Chrisley, was in the kitchen preparing to cook a meal for the family.

26. Moore began aggressively banging on the front door.

27. Plaintiff Ashleigh Chrisley looked outside and observed that the person banging on the door was Kentravis Moore.

28. She informed her husband and he said "I'm not going outside" because he did not want to get into an altercation.

29. For about 10 minutes, Kentravis Moore intermittently banged on the front door, peered around the home's exterior apparently checking for cameras, and used his phone.

30. The Chrisleys waited inside their home and hoped that Moore would simply leave

without further escalating the encounter.

31. When the banging stopped briefly, Ashleigh Chrisley went upstairs to confirm Moore was leaving. Then, Ashleigh Chrisley suddenly heard renewed banging on the side door leading to the garage.

32. Moore jiggled the side door handle, but it was locked.

33. Plaintiffs Kyle and Ashleigh Chrisley were shocked – Moore was now attempting to forcibly enter their home.

34. Within moments of his attempt to enter the residence, Moore kicked the door several times and it shook violently.

35. Fearing for their safety due to Moore's prior threats and harassment, Plaintiff Kyle Chrisley decided to open the door and demand that Moore leave.

36. Kyle Chrisley exited through the front door and entered the garage, where Moore had already intruded without permission.

37. Kyle Chrisley approached Moore in the garage, asking why he was there and telling him to leave, as Chrisley owed him no money and Moore was trespassing.

38. Moore refused, insisting he would not leave without payment, and threatened, "I will kill you, dog."

39. Moore shoved Chrisley, initiating a physical altercation.

40. Chrisley shoved back in self-defense, and the two men pushed each other out of the garage and down the driveway.

41. At no point did Chrisley brandish or use a knife against Moore.

42. Ashleigh Chrisley observed the entire encounter from the garage doorway.

43. Neighbor Christine Cannon, from her nearby residence, heard yelling and physical sounds (which she described as sounding like slapping or punching). Cannon then observed Chrisley and Moore fighting, with Chrisley telling Moore to leave. At no time did Cannon see Plaintiff Chrisley with any weapon.

44. Neighbor James McRae heard aggressive yelling and a car revving[1] loudly, then observed Chrisley and Moore screaming at each other from about 30-35 feet apart, with no weapons visible. McRae was concerned for the Chrisley family's safety due to Moore's aggressive behavior.

45. As the shoving continued down the driveway, Moore struck Chrisley in the head with an object (later identified as keys on a keyring).

46. Kyle Chrisley picked the keys up. Moore grabbed the keys and pulled forcefully, causing the keyring to break and keys to scatter.

47. Kyle Chrisley continued to tell Moore to leave the property.

48. Moore raised his hands and said, "I hear you, my n_gga'. I'm leaving."

49. Kyle Chrisley, believing the confrontation over, walked back toward the garage, with Ashleigh following.

50. Moore got into his vehicle (the Chrysler without bumpers, tags, or visible license plate). He revved the engine aggressively, and intentionally reversed into Ashleigh Chrisley's parked SUV, smashing and damaging her vehicle.

51. Cannon witnessed Moore rev the engine before intentionally slamming into Ashleigh Chrisley's SUV.

---

[1] The term "revving," as used in this Complaint, means the intentional increase of a vehicle engine's revolutions per minute by depressing the accelerator pedal while the vehicle is stationary.

52. Moore then drove forward into the Chrisley's yard, performed two 360-degree spins while flinging topsoil into the air, and sped away toward the neighborhood exit.

53. Ashleigh Chrisley, fearing for her family's safety, called 911 to report the disturbance, threats, and vehicular attack.

54. Instead of leaving the neighborhood, Moore turned his vehicle around, drove back to the Chrisley family residence, and continued to use his vehicle to terrorize the Chrisley family in full view of their neighbors.

55. Upon his return, Moore revved his engine loudly, inching the car toward Kyle Chrisley to cause fear and intimidation.

56. A neighbor's Ring door camera captured Moore's driving and Ashleigh Chrisley's screams in response to Moore's conduct. (Exhibit 1 – Ring Camera Footage)[2].

57. Moore yelled "Kyle, come get in front of my car so I can run your bitch ass over" and "Jump in front of the car so I can run your bitch ass over."

58. Chrisley, standing in his yard, grabbed a jack handle from the garage to defend himself, fearing imminent harm from the vehicle.

59. Cannon observed Moore revving the engine repeatedly in a threatening manner and attempting to run Chrisley over, prompting her to instruct her husband to call police (though he did not).

60. McRae heard the car revving and squealing tires, observed Moore's aggressive vehicle maneuvers, and was also concerned for Kyle Chrisley's safety.

---

[2] This exhibit is available at https://www.dropbox.com/t/W9LJzPUfoKy23tO5.

61. Moore finally sped away a second time.

62. Deputy Skyler Segroves of the Rutherford County Sheriff's Department arrived first on the scene. Other officers, including Defendant Officer Nicholas Smith, arrived shortly after.

63. Upon arrival, deputies first demanded Ashleigh Chrisley's insurance information, treating the incident as a potential mutual fault accident despite her report and the fact that her parked vehicle in her own driveway was rammed.

64. None of the deputies checked to see whether Moore had insurance on his vehicle. He did not.

65. Deputies informed the Chrisleys that Moore had been stopped nearby and claimed Chrisley stabbed him with a knife.

66. Kyle Chrisley denied the allegation, explaining Moore was the aggressor, had trespassed, frightened his family, threatened to kill him, initiated physical contact, rammed the SUV, and returned attempting to run him over.

67. Ashleigh Chrisley corroborated this account to deputies.

68. Deputies spoke briefly with neighbor James McRae, who reported hearing revving, yelling, and expressed concern for Kyle Chrisley's safety, and saw no knife.

69. Deputies did not interview Cannon or other neighbors, despite the fact that they were standing outside in this residential area and obviously witnessed at least part of the events under investigation.

70. Smith questioned Chrisley about knives, falsely claiming Moore described a

"machete-like blade" to trick Chrisley into cooperating.

71. Chrisley cooperated fully, opening his toolbox and showing knives, none matching a machete.

72. Chrisley accompanied Smith while they searched his truck and garage for knives.

73. Defendant Smith took pictures of one or more of Chrisley's knives on a cell phone.

74. Defendant Smith sent those images to one or more officers who were with Moore.

75. Moore reviewed the photos then falsely claimed that one of the knives depicted in Smith's images as a knife that Chrisley used to stab him.

76. Smith seized this knife, claiming it matched Moore's description, despite the deception.

77. Moore explained the vehicle tracks in the yard and the damage to Ashleigh Chrisley's vehicle as the result of him being scared and pressing on the accelerator in an attempt to get out of the area quickly.

78. However, the tire tracks were circular and obviously caused by intentional destruction, not the result of straight-line acceleration or any attempt to maneuver a vehicle out of the area.

79. Likewise, the driveway itself was straight and it is undisputed that Moore was parked roughly parallel to Ashleigh Chrisley's vehicle.

80. Smith observed tire marks in the yard and scattered keys, corroborating Chrisley's defensive actions and Moore's vehicular threats.

81. Smith, Skyler Segroves, and Steve Hill knew or reasonably should have known that other witnesses (the neighbors) were readily available to provide information

material to their investigation.

82. Smith, Segroves, and Hill knew that Tennessee law provides an affirmative defense

83. Despite this evidence, Smith decided to arrest Kyle Chrisley for aggravated assault against Moore, ignoring Moore's aggression, threats, trespass, and vehicular assault.

84. As the encounter continued to unfold in her front yard, Ashleigh Chrisley pulled out her phone and attempted to begin recording the actions of the Rutherford County Sheriff's Deputies.

85. Defendant Smith told her that she had to back up and put her phone down or she would be arrested.

86. In the alternative, Defendant Hill told Ashleigh Chrisley she had to back up and put her phone down or she would be arrested.

87. At the time Ashleigh Chrisley was ordered to put her phone down under threat of arrest, she was not close to the officers and posed no threat to officer safety.

88. Ashleigh Chrisley was initially intimidated by the officer's threats and this prevented her from capturing the next few moments on video.

89. Kyle Chrisley was confused and told Ashleigh Chrisley to "call an attorney," with his hands in front of him.

90. Smith and Deputy Steve Hill threw Chrisley to the ground, placed knees on his back, and handcuffed him despite the fact that Chrisley used no force against the officers and did not otherwise resist.

91. Defendant Hill initiated Kyle Chrisley's arrest by grabbing him without warning and throwing him to the ground.

92. Defendants Hill and Smith jointly and forcefully pinned Kyle Chrisley to the ground, with Smith pressing his knee on the back of Kyle Chrisley's neck.

93. Plaintiff Kyle Chrisley screamed in pain and confusion.

94. Plaintiff Kyle Chrisley did not use force against the officers during the arrest.

95. Despite the Officers prior threats, Ashleigh Chrisley used her phone to take a photograph of the officers pinning her husband down in her front yard.

96. Plaintiff Kyle Chrisley was transported to jail based on Smith's conduct and charged with aggravated assault.

97. Defendant Smith swore out an affidavit in support of a warrant for Kyle Chrisley's arrest, which stated:

> "On Monday, 9/9/24, at approximately 1512 hours Deputies responded to 1038 California Dr in reference to a disturbance. The caller (Ashleigh Chrisley, DOB 7/3/90) advised that a male subject (later identified as Kentravis Moore, DOB 3/26/01) was trying to run over her husband (identified-as Kyle Chrisley, DOB **/**/**).

> Deputies made contact with Moore down the street from the residence in his vehicle. Moore stated that he went to the residence trying to collect money that Kyle owed him. Moore stated that Kyle answered the door to the residence angry with him. Moore stated that Kyle grabbed a knife out of his toolbox in the garage and attempted to stab him several times. Moore stated that Kyle did cut his left arm. Moore stated that he then ran to his vehicle and began backing out of the driveway to get a way quickly. Moore stated that he hit a vehicle parked in the driveway while reversing, then went forward through the yard.

> Moore had holes in his over-shirt and a cut on his left arm (elbow area) consistent with his statement. Moore described the area where he stated Kyle retrieved the knife and gave a description of the knife. A knife matching the description he gave was recovered from Kyle's garage.

Deputy Smith advised Kyle to turn around after conducting the investigation. Kyle refused and tensed up, holding his arms in front of his body attempting to not be placed into custody. Deputies had to place Kyle on the ground and place his hands behind his back to place him into custody due to him resisting arrest."

98. The totality of the circumstances known and readily available to Defendant's Smith and Hill included:

(a) Eyewitness statements from neighbors Christine Cannon and James McRae, who independently corroborated Kyle Chrisley's account that he did not brandish or use a knife against Moore and that Moore was the aggressor. Both neighbors expressed concern for Chrisley's safety due to Moore's aggressive behavior and neither witnessed any knife.

(b) The threats and aggressive actions by Moore, including threats made directly to the Chrisleys' minor daughter, Moore's forcible attempt to enter the Chrisley residence, and Moore's violent conduct with his vehicle captured on camera and described by multiple eyewitnesses.

(c) The presence of substantial physical evidence at the scene, including tire marks consistent with intentional destruction of property and intimidation rather than mere attempts to escape, scattered keys from Moore's physical assault on Chrisley, and substantial damage to Ashleigh Chrisley's stationary SUV.

(d) That Kyle Chrisley cooperated fully by showing knives in his possession voluntarily, that none matched the initial description falsely provided by Smith to Chrisley, and that Moore identified a knife only after being

shown photographs from Chrisley's property by Smith, indicating suggestive and deceptive investigative practices.

(e) That Moore's vehicle, driving, and aggression exhibited Moore's intent to intimidate and evinced the fact that Moore was the initial aggressor during the confrontation at the Chrisleys' home;

(f) That Moore's statement regarding accidental vehicular collision due to panic was demonstrably false based on physical evidence, witness statements, and video evidence clearly depicting deliberate and aggressive driving maneuvers by Moore.

(g) That Moore has a history of harassment and threats by Moore directed at the Chrisleys.

(h) That Chrisley did not refuse to cooperate or resist arrest.

99. In the alternative, even if the officers could reasonably have believed that the alleged scratch on Moore's elbow was caused by Kyle Chrisley, the readily available exculpatory evidence would have conclusively established in the mind of any reasonable officer that the affirmative defense of self-defense protected Kyle Chrisley's conduct:

b) Kyle Chrisley was inside his own home when an aggressive, uninvited individual with a known history of threats attempted to force entry into the garage by jiggling the locked door handle and kicking the door.

c) Upon exiting to confront the intruder, Chrisley remained within the curtilage of his residence and was immediately subjected to verbal

threats and physical assault.

d) Chrisley did not initiate physical contact and instead responded only after being shoved by Moore, who had unlawfully and forcibly intruded into the garage.

e) Under Tenn. Code Ann. § 39-11-611(b)(1)–(2), Chrisley had no duty to retreat and was entitled to use reasonable force, including force likely to cause serious bodily injury, because (1) he was in a place he had a right to be; (2) he reasonably believed that force was immediately necessary to protect himself from Moore's unlawful and violent conduct; and (3) the threat of imminent death or serious bodily injury was both real and reasonably perceived based on Moore's conduct. The totality of circumstances established a statutory presumption in favor of self-defense under Tenn. Code Ann. § 39-11-611(c), which no reasonable officer could have disregarded.

100. On information and belief, one or more officers at the scene recognized Plaintiff Kyle Chrisley as a member of the Chrisley family, who are widely known from the reality television series *Chrisley Knows Best* and associated public controversies.

101. On information and belief, rather than conducting an objective investigation, Defendants Smith and Hill appeared eager to arrest Chrisley, treating the encounter as an opportunity to make headlines by arresting a well-known figure.

102.     On information and belief, the arrest was motivated in part by animus toward Plaintiff Kyle Chrisley based on his notoriety, past public controversies, or perceived privilege, rather than on the facts or law surrounding the September 9, 2024 incident.

103.     The officers' decision to disregard exculpatory evidence, bypass willing eyewitnesses, and pursue charges despite clear affirmative defenses is consistent with such an improper motive.

104.     The false arrest and excessive force violated Chrisley's Fourth Amendment rights, causing physical injury, emotional distress, and deprivation of liberty.

## MUNICIPAL LIABILITY ALLEGATIONS

105.     Upon information and belief, Defendant Rutherford County has maintained official policies, widespread customs, or tolerated practices that were the moving force behind the deprivation of Plaintiffs' clearly established constitutional rights, including:

  a. A failure to adequately train officers regarding the clearly established First Amendment right of civilians to record law enforcement activity in public or from private property, including the proper response to recording by bystanders during law enforcement encounters;

  b. A failure to discipline or retrain officers who retaliate against or threaten arrest of individuals lawfully recording law enforcement activity, thereby fostering a culture in which officers feel empowered to suppress constitutionally protected expression without consequence;

c. A failure to train officers on the duty to identify and consider affirmative defenses, such as the statutory self-defense protections under Tenn. Code Ann. § 39-11-611, during the investigation and decision to arrest a suspect for assault.

d. A failure to implement appropriate supervisory review or investigative protocols to ensure that officers assess all readily available exculpatory evidence, including eyewitness accounts, physical evidence, and video footage, before initiating arrests for serious felony charges;

e. A custom or practice of permitting arrests in situations where the facts known to officers establish a clear statutory affirmative defense in favor of self-defense, resulting in wrongful criminal charges against victims of aggression and intrusion.

110. Upon information and belief, Kyle and Ashleigh Chrisley were not the first individuals to experience retaliatory threats for exercising the right to record officers, or to be arrested by Rutherford County officers under circumstances in which self-defense was clearly applicable and exculpatory evidence was readily available but disregarded.

111. These failures were known to policymakers within the Rutherford County Sheriff's Department, who either affirmatively sanctioned the practices or exhibited deliberate indifference by failing to correct them in the face of repeated or obvious constitutional violations.

112.    Rutherford County's failure to adequately train, supervise, or discipline its deputies with respect to these recurring situations constituted deliberate indifference to the constitutional rights of individuals, including Plaintiffs, and was the moving force behind the First and Fourth Amendment violations alleged herein.

## CLAIM 1 – UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT – FALSE ARREST
### 42 U.S.C. § 1983
### (Plaintiff Kyle Chrisley v. Defendants Smith and Hill)

106.    Defendants Smith and Hill arrested Kyle Chrisley without probable cause.

107.    The warrant Defendant Smith swore out after the fact intentionally or recklessly omitted materially exculpatory evidence known and contained false statements as described *supra*.

108.    As a direct and proximate result, Plaintiff suffered injuries including the deprivation of his federally protected constitutional rights.

## CLAIM 2 - UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT – EXCESSIVE FORCE
### 42 U.S.C. § 1983
### (Plaintiff Kyle Chrisley v. Defendants Smith and Hill)

109.    At the time of Kyle Chrisley's arrest, he was not resisting and did not use force against the officers.

110.    There was no threat to the officers at the time of Kyle Chrisley's arrest.

111.    .There was no reasonable justification for throwing Kyle Chrisley to the ground or for placing a knee on the back of his neck.

112.    The officers' use of force against Kyle Chrisley was objectively unreasonable under the circumstances.

113.    As a direct and proximate result of the arrest, Plaintiff suffered injuries including the deprivation of his federally protected constitutional rights.

### CLAIM 3 – VIOLATION OF THE FIRST AMENDMENT RIGHT TO RECORD POLICE OFFICERS
### 42 U.S.C. § 1983
### (Plaintiff Ashleigh Chrisley v. Defendants Smith and Hill)

114.    Defendant Smith, or in the alternative, Defendant Hill ordered Ashleigh Chrisley under threat of arrest to stop recording their conduct in the Chrisleys' front yard.

115.    But for the threat, Ashleigh Chrisley would have recorded the arrest of her husband.

116.    Ashleigh Chrisley had a clearly established First Amendment right to record police activity at the time of her husband's arrest.

117.    Ashleigh Chrisley posed no threat to officer safety and was not interfering with police operations at the time she was ordered to put her phone down.

118.    Defendant Smith, or in the alternative, Defendant Hill intentionally infringed on Ashleigh Chrisley's First Amendment right to record police activity by ordering her, under threat of arrest, to put her phone down.

119.    The Officers' threats of arrest would deter a person of ordinary firmness from engaging in the protected activity of recording police officers.

120.    As a direct and proximate result of the Officers' conduct, Plaintiff Ashleigh Chrisley suffered injuries including the deprivation of their federally protected

constitutional rights.

DAMAGES

121.     As a direct and proximate result of the Defendants' violations of the Plaintiffs' federally protected rights, Plaintiffs have suffered:

    a.  Attorney's fees and expenses incurred in defending Kyle Chrisley's criminal prosecution;

    b.  Humiliation and damage to public reputation;

    c.  Pain and suffering;

    d.  Mental suffering and emotional distress.

    e.  Economic losses;

122.     Based on their intentional misconduct, Plaintiffs requests an award of punitive damages against Defendants Smith and Hill.

REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiffs request:

I.     Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II.    A jury be empaneled to try this case;

III.   That Plaintiffs be awarded nominal damages;

IV.    That Plaintiffs be awarded compensatory damages of $1,700,000.00;

**V.** That Plaintiffs be awarded punitive damages in an amount determined by the jury against defendants Smith and Hill;

**VI.** That Plaintiffs be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

**VII.** For pre- and post-judgment interest on all damages awarded;

**VIII.** For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Ben Clark*
Wesley Ben Clark #32611
Frank Ross Brazil #34586
Sarah Mansfield #39476
Paul D Randolph #39667
BRAZIL CLARK, PLLC
760 E Argyle Ave.
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
sarah@brazilclark.com
paul@brazilclark.com